**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFD ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> CITY OF EUREKA, <br><br> Defendant. <br><br>_____/ <br><br> And Related Counterclaims, Cross-claims, and Third-Party Claims. <br>_____/ | No. C 08-4571 MMC <br><br> **ORDER GRANTING IN PART AND DENYING IN PART ENVIRONMENTAL RESOLUTIONS, INC.'S MOTION TO DISMISS KFD'S THIRD AMENDED COMPLAINT, CITY OF EUREKA'S THIRD AMENDED CROSS-COMPLAINT, WINZLER & KELLEY'S AMENDED CROSS-COMPLAINT, UNOCAL'S THIRD- PARTY COMPLAINT, AND UNION OIL'S CROSS-COMPLAINT** |

Before the Court is defendant, third-party defendant and cross-defendant Environmental Resolutions, Inc.'s ("ERI") Motion To Dismiss and Strike Claims, filed May 27, 2010, pursuant to Rules 12(b)(6), 12(c), and 12(f) of the Federal Rules of Civil Procedure. Plaintiff KFD Enterprises ("KFD"), cross-claimant City of Eureka ("City"), and cross-claimant Winzler & Kelly, have filed oppositions to the motion, to which ERI has separately replied. Additionally, third-party plaintiff Unocal Corporation ("Unocal"), cross-claimant Union Oil Company of California ("Union Oil"), and their corporate parent, Chevron Corporation (collectively "Petroleum Defendants"), have jointly filed a statement of

limited non-opposition to the motion, to which ERI has replied.[1] Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[2]

**BACKGROUND**

The instant action was filed initially by KFD and "aris[es] out of environmental contamination at and around 2907 E Street in Eureka, California" (the "Property"), where KFD "has owned and operated a dry cleaning business." (TAC ¶¶ 1, 19). By order filed April 22, 2010, the Court dismissed, with leave to amend, certain of the claims against ERI as alleged in KFD's Second Amended Complaint and Winzler & Kelley's Cross-Complaint. (See Order Granting in Part and Denying in Part Environmental Resolution, Inc.'s Motion for Judgment on the Pleadings ("Order"), filed April 22, 2010, at 10-11.) By that same order, ERI's motion to dismiss claims brought by Union Oil and Unocal, to the extent such claims were based on ERI's liability to KFD or to the City, were denied without prejudice. (See id. at 10.)

On May 10, 2010, KFD filed its Third Amended Complaint ("TAC") alleging, as against ERI, the following claims for relief: (1) "Cost Recovery Pursuant to CERCLA § 107(a)" (First Claim for Relief); (2) "Hazardous Substance Statutory Indemnity" (Third Claim for Relief); (3) "Equitable Indemnity" (Fourth Claim for Relief); (4) "Common Law Contribution" (Fifth Claim for Relief); (5) "Declaratory Relief" (Sixth Claim for Relief); (6) "Continuing Private Nuisance" (Seventh Claim for Relief); (7) "Continuing Public Nuisance" (Eighth Claim for Relief); (8) "Continuing Public Nuisance per se" (Ninth Claim for Relief); (9) "Continuing Trespass" (Tenth Claim for Relief). On May 14, 2010, Winzler & Kelly filed its Amended Cross-Claim ("FACC") alleging, as against ERI: (1) "Contribution Under

---

[1] With respect to KFD, the City, and Winzler & Kelley, ERI seeks dismissal under Rule 12(b)(6); with respect to Unocal and Union Oil, ERI seeks judgment on the pleadings under Rule 12(c).

[2] Defendants Firbimatic SpA ("Firbimatic") and R.R. Street & Co., Inc. ("R.R. Street") are not named in the instant motion as those defendants have not filed claims against ERI. Firbimatic and R.R. Street's respective motions to dismiss KFD and the City's claims against them are the subject of an order filed concurrently herewith.

CERCLA" (First Cross-Claim); (2) "State Law Contribution" (Second Cross-Claim); and (3) "State Law Equitable Indemnity" (Third Cross-Claim).

Prior to the Court's issuance of the above-referenced Order, ERI and the City filed a stipulation, approved by the Court, by which ERI withdrew its motion for judgment on the pleadings as to the City's Second Amended Cross-Complaint ("SACC") and the City was afforded leave to file a third amended pleading against ERI. (See Stipulation and Order for Filing Amended Third-Party Complaint by Defendant City of Eureka as to Third Party Defendant Environmental Resolutions, Inc., filed March 24, 2010, at 2.) On April 30, 2010, the City filed its Third Amended Counter-Claim and Cross-Claim ("TACC"), alleging, as against ERI, the following claims for relief: (1) "Cost Recovery Under CERCLA" (First Claim for Relief); (2) "Contribution Under CERCLA" (Second Claim for Relief); (3) "Declaratory Judgment Under CERCLA" (Third Claim for Relief); (4) "Hazardous Substance Statutory Indemnity" (Fourth Claim for Relief); (5) "Hazardous Substance Statutory Contribution" (Fifth Claim for Relief); (6) "Negligence" (Sixth Claim for Relief); (7) "Negligence per se" (Seventh Claim for Relief); (8) "Continuing Private Nuisance" (Eighth Claim for Relief); (9) "Private Nuisance per se" (Ninth Claim for Relief); (10) "Continuing Public Nuisance" (Tenth Claim for Relief); (11) "Continuing Public Nuisance per se" (Eleventh Claim for Relief); (12) "Continuing Trespass" (Twelfth Claim for Relief); (13) "Equitable Indemnity" (Fifteenth Claim for Relief); (14) "Contribution" (Sixteenth Claim for Relief); (15) "Declaratory Relief Under State Law" (Seventeenth Claim for Relief).

By the instant motion, ERI seeks to have all claims against it dismissed and/or stricken.

**DISCUSSION**

**I.    Motion to Dismiss**

    **A.    KFD's TAC**

In its prior Order, the Court granted ERI's motion to dismiss as to KFD, finding KFD had failed to allege sufficient facts either as to the nature of ERI's activities or the manner in which such activities caused the subject contamination and, in particular, sufficient facts

to show how ERI could be held liable as a "covered person'" under the Comprehensive Environmental Conservation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, et. seq..[3] (See Order at 7.) By its TAC, KFD has cured those deficiencies. In particular, KFD now alleges:

> ERI drilled and installed five monitoring wells at the Property, from which it drew groundwater samples quarterly, over several years, including 2001, 2002, and 2003. ERI drilled at least two of its wells into two separate water bearing zones: an upper zone and lower zone separated by an aquitard, a low permeability layer. The aquitard functioned as a natural barrier between upper and lower underground zones. ERI pierced this natural barrier in its drilling and installed monitoring well screens connecting the upper and lower water bearing zones, causing groundwater from the upper zone to pour into the lower zone. The upper groundwater ERI released into the lower zone contained chlorinated solvents (among them PCE) originating in part from wastes generated at the Property during Union Oil's ownership. ERI should have constructed monitoring wells that drew from each underground zone separately; these wells are called nested monitoring wells. . . . ERI's wells that caused this cross-contamination have been abandoned. ERI's cross-contaminating wells released contaminants from a naturally contained shallow water bearing zone into the deeper more permeable soil and groundwater underlying the Property, causing the release of the solvents resulting in widespread contamination of surrounding soils and groundwater.

---

[3] The following are "covered persons" under CERCLA:

   (1) the owner and operator of . . . a facility,
   (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,
   (3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility . . . owned or operated by another party or entity and containing such hazardous substances, and
   (4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities . . . or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance[.]

42 U.S.C. § 9607(a).

4

1  (TAC ¶ 27.)  The TAC also alleges that "at all times relevant herein ERI was acting as an
2  agent, servant, and/or employee of Union Oil, Unocal, and Chevron when it engaged in
3  contaminant investigation, containment, and/or clean up at the Property."  (TAC ¶ 28.)  As
4  to ERI's status as a covered person under CERCLA, the TAC alleges that ERI qualifies as
5  an "operator" and a "transporter" under 42 U.S.C. §§ 9607(a)(2) and (4), respectively.
6  (TAC ¶ 38.)

### 1. "Covered Person" Under CERCLA and HSAA

ERI argues the above-quoted allegations are insufficient to plead ERI's liability as a covered person, or potentially responsible party ("PRP"), under either CERCLA or California's Hazardous Substance Account Act ("HSAA"), Cal. Health & Safety Code § 25300, et. seq. See id. § 25363.[4]  In particular, ERI argues, KFD's allegations do not show (1) that ERI had "sufficient control" over the Property to qualify as an "operator" under § 9607(a)(2) (see ERI's Reply to KFD's Opp. at 2:12-14), and (2) that ERI is liable as a "transporter" under § 9607(a)(4) as there is no allegation that ERI transported any hazardous material to the Property, that it "selected" any disposal site (Mot. at 14:12-13), or that it "accepted any hazardous substances for transport" (see ERI's Reply to KFD's Opp. at 5:23-6:3).  ERI's arguments are unavailing.

### a. Operator Liability

As the Court noted in its prior Order, "operator liability" under CERCLA "'attaches if the contractor had authority to control the cause of the contamination at the time the hazardous substances were released into the environment.'"  (Order at 9:26-10:1 (quoting Kaiser Aluminum & Chemical Company v. Catellus, 976 F.2d 1338, 1341 (9th Cir. 1992)).) KFD's allegations plead that ERI was a contractor, that ERI had authority to control the cause of the contamination, and that ERI's authority to control the cause of contamination was concurrent with the release of hazardous substances into the environment.  (See TAC

---

[4] The HSAA adopts the liability provisions of CERCLA, including CERCLA's description of responsible parties and available defenses.  See FMC Corp. v. Vendo Co., 196 F.Supp.2d 1023, 1039 (E.D. Cal. 2002).

5

¶ 27 (alleging ERI, in course of drilling wells, pierced aquitard, which caused release of contaminants into previously uncontaminated ground); ¶ 28 (alleging ERI, at all relevant times, was acting as "agent, servant, and/or employee" of Petroleum Defendants); ¶ 38(a) (alleging, inter alia, ERI had "authority to drill," and that "ERI selected, implemented and controlled drilling procedures that caused contaminants to migrate . . . to uncontaminated deeper aquifers").

ERI contends the TAC nonetheless fails to plead operator liability because "the plain meaning of the statute is that the PRP must operate the facility at issue, not just any minor project on the site." (ERI's Reply to KFD's Opp. at 3:9-10.)  ERI's argument is not persuasive.  First, as noted in Kaiser, courts "construe CERCLA liberally to achieve [its] goals," one of which is to "affix the ultimate cost of cleaning up" to "the parties responsible for the contamination".  See Kaiser, 976 F.2d at 1340.[5]  Second, contrary to ERI's argument, Kaiser is not distinguishable on its facts, nor is there any suggestion therein that, for purposes of qualifying as an "operator," a defendant need have more than control over "the activity" that "causes the pollution."  See id. at 1342 (internal quotation and citation omitted).  Kaiser involved a contractor hired to excavate and grade a portion of city-owned land for a proposed housing development.  See id. 1339.  The Ninth Circuit found operator liability had been sufficiently pleaded, where the complaint alleged the contractor had "exacerbated the extent of the [existing] contamination by extracting the contaminated soil from the excavation site and spreading it over uncontaminated areas of the property." Id. at 1340.  The Ninth Circuit did not require the contractor to have control over the entire property, but only over the contaminating "activity."  See id. at 1342.  Here, as discussed above, the TAC alleges that ERI had control over the "drilling and extraction procedures,"

---

[5]Indeed, under CERCLA itself, "[t]he term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel."  42 U.S.C. § 9601(9).

the activity alleged to have spread the contamination "to uncontaminated deeper aquifers, resulting in widespread pollution." (See TAC ¶ 38.)

In sum, KFD has alleged operator liability.

### b. Transporter Liability

ERI next argues that KFD's allegations are insufficient to plead transporter liability under § 9607(a)(4). In particular, ERI argues, there is no allegation that ERI "transported any hazardous material to the subject property," or that ERI "accepted [hazardous] waste" for transport or "'selected' any disposal site." (See Mot. at 14:11-18; Reply to KFD's Opp. at 6:8-9.) ERI's first point is not well-taken. As the Ninth Circuit observed in Kaiser, "[t]here is no logical basis for a defendant's liability as a 'transporter' under section 9607(a)(4) to hinge solely on whether he moves hazardous substances across a recognized property boundary." See Kaiser, 976 F.2d at 1343 (holding "liability may be imposed under section 9607(a)(4) for transporting hazardous materials to an uncontaminated area of property").

ERI's second point, however, has merit. Although Kaiser did not directly address CERCLA's further requirement that the defendant "accept" hazardous material for transport to a selected site, the Ninth appears to have inferred such acceptance from the contractor's manifest intent to transport the soil containing the hazardous material at issue therein. See id. Here, by contrast, although KFD sufficiently alleges a transport by ERI, KFD's allegations are insufficient to give rise to an inference that ERI accepted the subject hazardous material for transport. In particular, the TAC's allegation that "ERI . . . . drew groundwater samples" from the monitoring wells (TAC ¶ 27) is insufficient. As ERI points out, the TAC "does not allege that ERI picked up contaminants" but, rather, implies that such hazardous substances "seeped through the well by accident." (See Reply to KFD's Opp. at 6:8-11); see also Southern California Water Co. v. Aerojet-General Corp., 2003 WL 25537163, *3 n.2 (C.D. Cal. Apr. 1, 2003) (finding allegation that party "pumped contaminated groundwater" insufficient to allege transporter liability because "unlike the PRP in Kaiser," party "did not accept the . . . hazardous waste"). Consequently, KFD's allegations do not suffice to plead ERI's liability as a transporter.

7

Accordingly, to the extent KFD's First and Third Claims for Relief are based on operator liability, ERI's motion will be denied and to the extent such claims are based on transporter liability, the motion will be granted.

### 2. Nuisance and Trespass "Continuing Torts"

ERI argues that KFD's Seventh through Tenth Claims for Relief, alleging state law claims for "continuing" nuisance and "continuing" trespass are, in part, subject to dismissal based on the applicable statute of limitations. (See Mot. at 19.) "A nuisance is an interference with the interest in the private use and enjoyment of the land and does not require interference with the possession." Wilson v. Interlake Steel Co., 32 Cal. 3d 229, 233 (1982). "A trespass is an invasion of the interest in the exclusive possession of land, as by entry upon it." Id. Under California law, a three-year statute of limitations applies to "[a]n action for trespass upon or injury to real property." Cal. Code Civ. Proc. § 338(b). Here, the parties do not dispute that § 338(b) provides the relevant limitations period. Further, there is no disagreement as to how that statute should be applied. In particular, ERI contends the above-referenced claims should be dismissed to the extent they "accrued prior to June 12, 2006," i.e., three years before "the date ERI was first named in this lawsuit"[6] (ERI's Reply to KFD's Opp. at 9:4-8), and KFD responds that because "KFD [has] alleged the damage is ongoing, . . . damages are limited to the preceding three years from when ERI was first named in the complaint" (KFD's Opp. at 8:20-25).

Accordingly, ERI's motion to dismiss KFD's Seventh through Tenth Claims for Relief will be granted to the extent such claims accrued prior to June 12, 2006.

### 3. Preemption of State Law Indemnity and Contribution

ERI argues that KFD's Third through Fifth Claims for Relief, alleging state statutory and common law causes of action for indemnity and contribution, are subject to dismissal

---

[6] ERI became a party to the instant action on June 12, 2009, the date on which Unocal filed its Third Party Complaint naming ERI as a third-party defendant. ERI initially sought dismissal of the above-referenced claims "to the extent they accrued prior to October 1, 2005," three years before the action was initiated by KFD. (See Mot. at 20:6-9) (emphasis omitted).

8

on federal preemption grounds. In particular, ERI argues, "[a]ny state common law indemnity claims, or even California statutory indemnity claims, are preempted by CERCLA if the Court determines ERI could be a PRP" under CERCLA. (Mot. at 21:20-21.) The Court disagrees, for the reason that ERI's argument is premature at the pleading stage.

At the outset, the Court notes that in ruling on the instant motions to dismiss, the Court is not making any finding that ERI, or any other entity, is, in fact, a PRP. Rather, at the pleading stage, the Court's role is to determine whether allegations contained in a complaint "are sufficient to allege potential liability" as a PRP. See Kaiser, 976 F.2d at 1343 (emphasis added). Indeed, in its Reply, ERI concedes that "if the Court makes no definitive ruling that ERI is a PRP, then it might be proper to deny this part of the motion without prejudice until the issue of ERI's status as a PRP is definitively resolved." (ERI's Reply to KFD's Mot. at 9 n.6) (emphasis omitted); see Fireman's Fund Ins. Co. v. City of Lodi, 302 F.3d 928 (9th Cir. 2002) (finding "preemption argument, . . . rooted in the [insurers'] assumption that [city] is a PRP," premature; remanding to district court for determination as to "whether [city] is a PRP").

Moreover, as ERI concedes, "CERCLA does not preempt state law claims as long as those remedies do not conflict or interfere with the accomplishment and execution of CERCLA's full purpose and objective." (Mot. at 21:22-24) (citing Fireman's Fund, 302 F.3d at 956) (internal quotation, citation and modification omitted). ERI, however, has not, at this time, identified any such conflict or interference. Cf. Fireman's Fund, 302 F.3d at 946 (finding local ordinance preempted to "extent that it protect[ed] [city] from contribution claims by other PRP's"; noting [city] cannot simply legislate away [city's] potential contribution liability under . . . federal law").

Accordingly, ERI's motion to dismiss KFD's Third, Fourth and Fifth Claims on grounds of preemption will be denied.

**B**.   **City of Eureka's TACC**

As noted above, ERI and the City previously entered into a stipulation whereby the City was permitted to file a TACC. (See Stipulation and Order, filed March 24, 2010, at 2.)

9

By such stipulation, the City agreed the TACC would "not add any additional claims for relief against [ERI]." (Id. at 2:23-24.)

In its TACC, the City alleges the following:

> ERI is, and at all times relevant . . . was, an environmental remediation company engaged in contamination investigation[,] containment and/or clean-up at the Property. . . . ERI drilled, installed, controlled, operated and/or maintained monitoring wells on the Property, and owned the component parts of said monitoring wells, which wells conveyed and transported PCE hazardous waste from a contaminated, shallow, water-bearing acquifer to a lower, deeper, water-bearing acquifer that was not contaminated. As a result of ERI's conduct, the lower, deeper, water-bearing acquifer became contaminated with these hazardous substances including but not limited to PCE released at the Property, thereby causing PCE contamination at, in, or around the soil and groundwater underlying the Property, and in the surrounding areas.

(TACC ¶ 27.) The TACC also alleges "Unocal, Union Oil and/or Chevron hired, controlled and/or directed ERI for the drilling, installation, control, ownership, operation and maintenance of these monitoring wells, and in so doing, ERI was acting as the agent for Unocal, Union Oil and/or Chevron at all times when it was on the Property." (TACC ¶ 29.) The TACC further alleges that "[t]he monitoring wells drilled, installed, owned, controlled, operated and maintained by ERI constitute a facility within the meaning of CERCLA." (TACC ¶ 46.) As to ERI's particular status as a covered person under CERCLA, the TACC alleges that ERI is "liable under CERCLA, 42 U.S.C. §§ 9607(a)(1), (2) and (3) as the owner or operator of the Property at the time of disposal, as [a] person[] who arranged for disposal of CERCLA hazardous substances on the Property, and as [a] person[] who owned or operated a facility." (TACC ¶ 50.)

### 1. "Covered Person" Under CERCLA and HSAA

ERI contends the City's allegations are, as a matter of law, insufficient to plead ERI's status as a PRP within the meaning of CERCLA. First, as to CERCLA liability based on ownership, ERI points out, correctly, that "[n]o party has alleged that ERI owned the property in question." (Mot. at 9:7.) The City's conclusory allegation that ERI was the "owner . . . of the Property at the time of disposal" (TACC ¶ 50) is unsupported by any facts

and, indeed, is contradicted by other allegations in the TACC.  (See TAC ¶¶ 27, 29.) Consequently, the City has failed to plead ERI's liability as an owner.

Next, as to the TACC's allegation that ERI is liable as an operator, ERI argues that the City has "pled [itself] out court on its CERCLA claim" because the City does not allege ERI had sufficient control over the Property at the time of contamination.  (See Mot. at 10:7-9.)  The Court disagrees.  Although the TACC contains no facts to support a finding that ERI operated "The Property," the TACC contains sufficient facts to support a finding that ERI operated a "facility" within the meaning of CERCLA, specifically, the "monitoring wells." (See TACC ¶ 46); 42 U.S.C. § 9601(a) (defining "facility" to mean, inter alia, "any . . . well . . . where a hazardous substance has been deposited [or] disposed of, [or] otherwise come to be located").[7]  Further, and again contrary to ERI's assertions, the City has not pled itself out of court by reason of its agency allegations (see TAC ¶ 29), as the City also pleads ERI itself "controlled" the wells (see TACC ¶ 27); see also Kaiser, 976 F.2d at 1342 (finding operator liability dependent upon "degree of control" over activity causing the contamination).

Lastly, to the extent ERI contends the TACC's allegations as to arranger liability are insufficient, the Court is in agreement.  In particular, the facts alleged are insufficient to show ERI "arranged" for the "disposal or treatment" of a hazardous substance.  See General Elec. Co. v. AAMCO Transmission, Inc., 962 F.2d 281, 286 (2nd Cir. 1992) (holding "it is the obligation to exercise control over hazardous waste disposal . . . that makes an entity an arranger"); see also Burlington Northern and Santa Fe Ry. Co. v. U.S., 129 S. Ct. 1870, 1879 (2009) (holding, "under the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of [or treat] a hazardous substance"); United States v. Cello Foil Products, Inc., 100 F.3d

---

[7] The Court finds unpersuasive ERI's argument that the "First through Fifth claims to the extent they allege ERI's monitoring wells are a 'facility' within the meaning of CERCLA" (Mot. at 19:2-3), "add [ ] a new claim for relief" (id. at 18:21-22) in violation of the parties' stipulation.  Such allegations do not plead "new claims" for relief, but, rather, plead a separate theory of liability under existing claims.

1227, 1231 (6th Cir. 1996) (noting "indispensable role that state of mind must play in determining whether a party has 'otherwise arranged for disposal . . . of hazardous substances'") (citing 42 U.S.C. § 9607(a)(3)). Here, the City's arranger liability allegations are solely based on ERI's drilling activities on the Property. (See TAC ¶ 27.) As ERI notes, the TACC contains no factual allegations that "ERI ever owned [or possessed] any waste or had the authority [to] control, dispose, or treat waste." (Mot. at 17:4-6.) Nor does the TACC contain any allegation that ERI took "intentional steps to dispose of," let alone treat, a hazardous substance. See Burlington Northern, 129 S. Ct. at 1879. Although CERCLA defines "disposal" broadly, see 42 U.S.C. §§ 6903(3), 9601(29), and although the TACC adequately alleges ERI's conduct caused such disposal, the TACC contains no allegations that ERI, either by contract or otherwise, was obligated or authorized, or in any manner, intended to do so. Consequently, the TACC's allegations are insufficient to plead arranger liability.

Accordingly, to the extent the City's First through Fifth Claims for Relief are based on owner and arranger liability, ERI's motion to dismiss will be granted, and to the extent such claims are based on operator liability, the motion will be denied.

### 2.   Negligence, Nuisance, and Trespass Claims for Relief

The Sixth through Twelfth Claims for Relief allege various forms of negligence, nuisance, and trespass. ERI argues that all such claims are time-barred, either in whole or in part, and that the negligence claims have not been supported by sufficient factual allegations. In its opposition, however, the City argues that ERI's "motion to dismiss mistakenly assumes that the [City] is seeking affirmative relief from ERI" and that "what the City's cross-complaint seeks is this: in the event the City is held liable for damages claimed by other parties . . . such liability should be passed through to other parties whose fault makes them responsible for such damages." (See City's Opp. at 2:2-7.) The City further states that it merely "seeks an apportionment of fault to the cross-defendants under claims of indemnity, contribution and declaratory relief, based on the cross-defendants' fault as pled." (See id. at 2:15-17); see also id. at 11:19-21 (stating "the allegations of negligence,

nuisance and trespass are allegations of ERI's wrongful conduct, which provide bases for the City's claims for indemnity and contribution"). Further, the Court finds the City's factual allegations provide sufficient support for contribution or indemnity based on negligence. The Court agrees with ERI, however, that the Eighth, Ninth, Eleventh, and Twelfth Claims for Relief are subject to dismissal because they violate the parties' stipulation wherein the City agreed the TACC "shall not add any additional claims for relief against" ERI. (See Stipulation and Order, filed March 24, 2010, at 2:23-24.)

Accordingly, ERI's motion to dismiss will be denied as to the Sixth, Seventh, and Tenth Claims for Relief and granted as to the Eighth, Ninth, Eleventh and Twelfth Claims for Relief.

### 3. Preemption of State Law Indemnity and Contribution Claims

ERI argues that the City's state law indemnity and contribution claims are preempted by federal law. For the reasons discussed above with regard to KFD's TAC, the Court finds ERI has failed to show it is entitled to dismissal at this time.

Accordingly, ERI's motion to dismiss the City's Fifteenth and Sixteenth Claims for Relief will be denied.

### C. Winzler & Kelley's FACC

The Court previously granted ERI's motion to dismiss as to Winzler & Kelley's Cross-Claims, for the reason that Winzler & Kelley "ha[d] not itself pled any facts therein pertaining to ERI, nor, in the alternative, ha[d] it identified therein any other party's allegations on which Winzler & Kelly's claims are based." (See Order, filed April 22, 2010, at 8:16-18.) The FACC cures the noted deficiencies. In particular, the FACC quotes extensively from KFD's TAC and the City's TACC, "upon which [Winzler & Kelley's] Cross-Claims are based," and expressly incorporates those allegations. (See FACC ¶¶ 23-25.) Consequently, to the extent Winzler & Kelley's FACC is based on KFD's and/or the City's allegations that ERI is a PRP, ERI's motion to dismiss will be denied to the extent that the Court has found KFD's and the City's allegations are sufficient. Additionally, ERI's argument that Winzler & Kelley's state law indemnity and contribution claims are

preempted by federal law will be denied for the same reasons as discussed above with respect to KFD's TAC.

Accordingly, ERI's motion to dismiss Winzler & Kelley's FACC will be denied to the extent it is based on KFD and the City's viable allegations.

### D. Motion for Judgment on the Pleadings on Union Oil's Cross-Complaint and Unocal's Third Party Complaint

In its prior order, the Court denied as moot ERI's motion to dismiss Union Oil's complaint "[t]o the extent Union Oil's First through Third Causes of Action, by which Union Oil brings claims for common law indemnification and declaratory relief, [were] based on Union Oil's liability to KFD" (see Order, filed April 22, 2010 at 8:1-3), and denied as premature ERI's motion to dismiss Unocal and Union Oil's cross-complaint "[t]o the extent Unocal and Union Oil's First through Third Causes of Action for common law indemnification and declaratory relief [were] based on said parties' liability to the City" (id. at 8:8-10). By the instant motion, "ERI only moves to dismiss those claims [brought by the Petroleum Defendants] under a preemption theory." (ERI's Reply to Unocal's Non-Opposition at 2:5-6.) As discussed above, with regard to KFD, the Court has found such argument premature and, to date, insufficiently supported.

Accordingly, ERI's motion for judgment on the pleadings as to Union Oil's Cross-Complaint and Unocal's Third Party Complaint will be denied.

### II. Motion to Strike

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

ERI seeks to strike any allegations made against it alleging covered person liability under CERCLA and the HSAA, and also seeks to strike any claim made against ERI for attorneys' fees. (Mot. at 23:18 - 25:14.) To the extent the motion seeks to strike allegations supporting claims as to which dismissal will be denied, the motion to strike likewise will be denied and to the extent the motion seeks to strike allegations supporting claims as to which dismissal will be granted, the motion to strike will be denied as moot.

To the extent ERI seeks an order striking from the pleading filed by KFD and the Petroleum Defendants any prayer or allegation for attorneys' fees (see KFD's TAC ¶¶ 43, 68, TAC at 1; Unocal's Third Party Complaint at 6; Union Oil's Cross-Complaint at 7), ERI's motion to strike will be granted.[8]

## II. Leave to Amend

In its prior Order, the Court afforded KFD an opportunity to plead facts regarding ERI's CERCLA liability. As discussed above, KFD's amended allegations are sufficient to plead operator liability but not transporter liability. Because ERI has not shown the claims brought against it "could not possibly be cured" by the allegation of additional facts, see Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995) (internal quotation and citation omitted), the Court will afford KFD an opportunity to amend its transporter liability allegations. In the event that KFD files a fourth amended complaint, it may also amend its Seventh through Tenth Claims to clarify that its claims as against ERI are confined to a period no earlier than three years prior to the date ERI was named a party to the instant action.

As noted above, the Court has not previously considered the sufficiency of the City's allegations as against ERI. Further, ERI has not shown the City's allegations of arranger liability "could not possibly be cured" by the allegation of additional facts. See Doe, 58 F.3d at 497. Accordingly, the Court will afford the City leave to amend its First through Fifth Claims for Relief to cure the above-noted deficiencies with respect to those claims.

Lastly, to the extent Winzler & Kelly's FACC incorporates KFD and the City's allegations as to which leave to amend is granted, Winzler and Kelly likewise will be afforded leave to amend.

---

[8] ERI's request, made for the first time in its Reply, that Winzler & Kelly's "reference" to attorneys' fees in the FACC be stricken (see ERI's Reply to Winzler & Kelly's Partial Opp. at 4:3-6; FACC ¶ 29), will be denied for the reason that the cited "reference" is not an express claim or prayer for attorneys' fees and because Winzler & Kelly was not provided sufficient notice as to such request (See Mot. at 25:9-13 (specifically identifying attorneys' fees claims in KFD, Unocal and Union Oil's pleadings, and generally requesting that "[a]ny other [such] paragraph, prayer, or provision in any complaint" be stricken).)

15

**CONCLUSION**

For the reasons stated above, ERI's motion to dismiss, for judgment on the pleadings, and to strike is hereby GRANTED in part and DENIED in part as follows:

1. With respect to KFD's First and Third Claims for Relief, ERI's motion to dismiss is DENIED to the extent KFD's claims are based on operator liability, and GRANTED to the extent KFD's claims are based on transporter liability, with leave to amend the transporter liability allegations.

2. With respect to KFD's Fourth, Fifth, and Sixth Claims for Relief, ERI's motion to dismiss is DENIED.

3. With respect to KFD's Seventh, Eighth, Ninth, and Tenth Claims for Relief, ERI's motion to dismiss is GRANTED to the extent such claims are alleged against ERI for conduct that predates June 12, 2006, with leave to amend, should KFD elect to do so, to clarify the time period for which such claims are alleged.

4. With respect to the City's First, Second, Third, Fourth, and Fifth Claims for Relief, ERI's motion to dismiss is DENIED to the extent the City's claims are based on operator liability, and GRANTED to the extent the City's claims are based on owner and arranger liability, with leave to amend to cure the above-noted deficiencies.

5. With respect to the City's Sixth, Seventh, and Tenth Claims for Relief, ERI's motion to dismiss is DENIED, and with respect to the City's Eighth, Ninth, Eleventh, and Twelfth Claims for Relief, the motion is GRANTED.

6. With respect to the City's Fifteenth, Sixteenth and Seventeenth Claims for Relief, ERI's motion to dismiss is DENIED.

7. With respect to Winzler & Kelly's First, Second, and Third Cross-Claims, ERI's motion to dismiss is DENIED to the extent said cross-claims are based on KFD and the City's claims as to which the Court has denied dismissal, and GRANTED to the extent said cross-claims are based on KFD and the City's claims as to which the Court has granted dismissal, with leave to amend to the extent KFD and the City have been afforded such leave.

8.  With respect to Union Oil's First, Second, and Third Causes of Action, ERI's motion for judgment on the pleadings is DENIED.

9.  With respect to Unocal's First, Second, and Third Causes of Action, ERI's motion for judgment on the pleadings is DENIED.

10.  To the extent ERI moves to strike any allegation or prayer for attorney's fees made in the pleadings filed by KFD, Union Oil and Unocal, ERI's motion to strike is GRANTED, and in all other respects the motion to strike is DENIED.

11.  To the extent KFD, the City and/or Winzler & Kelly seek to amend, to the extent allowed above, their respective pleadings as against ERI, any such amended pleading shall be filed no later than December 10, 2010.

**IT IS SO ORDERED.**

Dated: November 12, 2010

MAXINE M. CHESNEY
United States District Judge