United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KFD ENTERPRISES, INC., <br><br> Plaintiff - Counter-Defendant - Cross-Defendant, <br><br> v. <br><br> CITY OF EUREKA, <br><br> Defendant - Counter-Claimant - Cross-Claimant. | Case No.: 08-4571 MMC (JSC) <br><br> **ORDER RE: MOTION TO STRIKE SUPPLEMENTAL EXPERT REPORTS (Dkt. No. 603)** |

  This lawsuit involves a dry cleaner in operation in Eureka, California since 1979 and the extent that it and/or others are responsible for perchlooethylene ("PCE") and other chemical contamination in the soil and groundwater in the area below and adjacent to the dry cleaner. Now pending before the Court is the motion of the dry cleaner, KFD Enterprises, Inc. ("KFD") to strike "supplemental" expert reports recently submitted by the City of Eureka. (Dkt. No. 603.) After carefully considering the parties' submissions and evidence, and having had the benefit of oral argument on May 30, 2013, the motion is granted in part and denied in part as set forth below.

**BACKGROUND**

In 2003, the North Coast Regional Water Quality Control Board ("Regional Board") named KFD as a responsible party for PCE and other chemical clean up in the soil and groundwater around the dry cleaner. KFD subsequently initiated this lawsuit under the federal Comprehensive, Environmental Response, Compensation, and Liability Act ("CERCLA") and Resource Conservation and Recovery Act ("RCRA"), among other causes of action, seeking to hold the City of Eureka and additional parties responsible for the cost of the contamination remediation.

The District Court issued a "Pretrial Preparation Order" on January 24, 2012. The court ordered an expert discovery cut-off of October 26, 2012, with "Designation of Experts" no later than August 20, 2012 and "Rebuttal no later than September 7, 2012." (Dkt. No. 499.) The parties subsequently stipulated that expert rebuttal reports be submitted by September 19, 2012, and that expert discovery be completed by November 16, 2012 (Dkt. No. 544), and then stipulated again to continue the deadline to February 15, 2013 (Dkt. No. 557), and then again to May 17, 2013. (Dkt. No. 578.)

**A.   *The gravel opinions***

KFD submitted the expert report of Peter Krasnoff of West Environmental Services, Inc. ("West") as a retained expert. Krasnoff opined that the City's design of the sewer and manhole near the dry cleaner "required the placement of 'screened gravel,' which promoted vertical misalignment of the sewer and provides a preferential pathway for migration of contaminants in groundwater." (Dkt. No. 581-3 at 12.) Less than two weeks later, West submitted to the Regional Board a Draft Remedial Action Plan ("RAP") that showed gravel underneath the manhole operating as a pathway for the PCE to enter the deeper aquifer. (*Id.* at 38.) "In response to Mr. Krasnoff's expert opinions and the amended Draft RAP, the City began preparing its field investigation of the soils underneath the sewer and manhole." (Dkt. No. 581-1 at ¶ 28.) On January 3, 2013, the City informed KFD that it would perform a field investigation to take soil samples underneath the manhole and sewer on January 13, 2013. The City supplemented its Rule 26(A)(1) disclosures the following month by, among other

things, including a copy of the report of the January 13, 2013 field investigation. The report stated that no gravel was located under the manhole or sewer.

### B. *The opinions as to remediation efforts at other locations*

KFD also identified David Parson, the Regional Board geologist overseeing the remediation of the contamination site, as a non-retained expert. During fact discovery Parson testified that digging up the street near the dry cleaner (E street), and thus removing the source of the contamination, is the best way to address the groundwater contamination. (Dtk. No. 581-3 at 15.) Other parties submitted expert reports in which the experts opined that Enhanced In-Situ Bioremediation ("EISB") is a cost-effective treatment for the contamination site, and should have been considered by West in the draft RAP. (Dkt. No. 581-5 ¶ 4.) KFD responded with a rebuttal expert report in which Krasnoff reiterated that EISB is not appropriate.

The following month, and after the deadline for submission of rebuttal expert reports, Eureka expert Russell Juncal "oversaw the collection of public records" from the Regional Board to rebut Krasnoff's and Parson's opinions. (Dkt. No. 581-5 ¶ 3.) In particular, Juncal obtained a document that he contends shows EISB being successfully used at a site in Willits, California, which, according to Juncal, is similar to the site at issue here. (*Id.* ¶ 5-6.) He also obtained records that, he contends, show that despite Mr. Parson's testimony that excavation is the best remediation, the Regional Board has not made such recommendations in the past.

### C. *The motions*

KFD initially moved to strike Eureka's February 2013 supplemental Rule 26(A)(1) disclosures as untimely. The Court denied the motion without prejudice to KFD moving to strike the supplemental expert reports, if any, submitted by Eureka. Finally, in early May 2013, Eureka submitted supplemental expert reports from Juncal and its other expert, John Larson. The parties have agreed to vacate the deadlines for dispositive motions, pretrial submissions and trial.

## DISCUSSION

Under Rule 26(e)(1)(A), a party must supplement an expert report if it learns that the disclosure or response is incomplete or incorrect. Fed. R .Civ. P. 26(e)(1)(A). "The purpose of the rule is to prevent surprise or ambush at trial." *Medtronic Vascular, Inc. v. Abbott Cardiovascular Systems, Inc.*, No. 06-1066, 2008 WL 4601038, at * 1 (N.D. Cal. Oct. 15, 2008). "A party may not rely on Rule 26(e)(1) as a way to remedy a deficient expert report or as a means of producing a new report." *Id.*; *see also Talbert v. City of Chicago*, 236 F.R.D. 415, 424 (N.D. Ill. 2006) (stating that supplemental reports offering completely new expert opinions are excluded); *White v. Cinemark USA, Inc*., No. 04-397,2005 WL 1865495, at * 3 (E.D. Cal. Aug. 3, 2005) ("A party may not use a 'non-opinion' as a placeholder to spring a 'supplemental opinion' in the eleventh hour that squarely addresses the issues in a case."). "Although Fed. R. Civ. P. 26(e) requires a party to 'supplement or correct' disclosure upon information later acquired, that provision does not give license to sandbag one's opponent with claims and issues which should have been included in the expert witness' report (indeed, the lawsuit from the outset.)" *Beller ex rel. Beller v. U.S.*, 221 F.R.D. 696, 701 (D.N.M. 2003) (internal quotation marks and citation omitted).

Under Federal Rule of Civil Procedure 26(e)(2), "[a]ny additions or changes to [the] information [in an expert report] must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(2). Under Rule 26(a)(3), pretrial disclosures must be made at least thirty days before trial unless the presiding judge orders otherwise. Fed. R. Civ. P. 26(a)(3)(B).

**A.** *The Larson Supplemental Rebuttal Expert Report*

Larson relies on the report of the January 13, 2013 field investigation to rebut Krasnoff's expert opinion as to the use of gravel and depth of the excavation underlying the sewer and manhole. According to Larson, the data from the January 13 investigation shows that no gravel was used in the construction of the sewer and manhole and that the original excavation was not as deep as Krasnoff stated. In other words, Larson's supplemental report

uses the data from the January 2013 investigation to rebut Krasnoff's opinion as to the sewer and manhole being a preferential path for groundwater contamination.

The Court denies KFD's request to strike Larson's supplemental rebuttal expert report. KFD does not contend that the City could have performed the field tests between the submission of Krasnoff's expert report—where he first opined about there being gravel under the sewer and the depth of the excavation—and the deadline for rebuttal reports. Instead, it contends that the City should have conducted the investigation before the submission of any expert reports. But KFD does not identify anything in the record, including in any of the four iterations of the complaint, any depositions, or other pleadings, which put the City on notice that KFD was claiming that the design of the sewer required the use of gravel and a depth of excavation that created a preferential pathway for contamination. The 2009 Regional Board documents cited by KFD (Dkt. Nos. 582-2 & 582-3) do not include such theory. Further, the Larson supplemental report is not untimely pursuant to Rule 26(a)(3) as under the now-vacated schedule pretrial disclosures had to be made by August 9, 2013. Fed. R. Civ. P. 26(e)(2).

**B.** *The Juncal Supplemental Rebuttal Expert Report*

Juncal's supplemental expert report, provided to KFD on May 6, 2013, addresses much more than Larson's supplemental report. It can be divided into three categories: (1) supplemental opinions based upon January and March 2013 monitoring wells installed by Unocal; (2) supplemental opinions based on the January 2013 field investigation; and (3) supplemental opinions based upon reviews of Regional Board public records.

For the reasons explained above with respect to the Larson report, the Court declines to strike Juncal's supplemental opinions arising from the January 2013 data. The result is the same for the opinions based on the new Unocal data; Juncal could not have included such opinions in his August and September reports because the data did not yet exist.

Juncal's supplemental rebuttal opinion 10 regarding information about other Regional Board sites in remediation presents a different situation. Juncal relies on this information to challenge KFD's position that digging up the street and removing the source of contamination

is the most cost effective remedial measure. He also relies on information from four dry cleaning sites as further support for his opinion that EISB is an appropriate option that should have been considered by West and the Regional Board. As the City concedes, however, Krasnoff's initial expert report unambiguously opined that digging up the street is the most appropriate remediation measure; moreover, during fact discovery Regional Board employee Parsons so testified. And long before the City's initial expert reports, the City was aware that the KFD's RAP did not include EISB. Thus, the City was on notice of KFD's position by August 20, 2012 at the latest, a month before the deadline for Juncal's rebuttal expert report. Juncal's rebuttal report thus should have included the new information he seeks to include in his supplemental rebuttal report. While he claims one document regarding a Willits dry cleaner was not available until after he submitted his report, there is nothing in the record that explains why he did not commence looking for the public records until October 2012, after his rebuttal report was filed. And his supplemental opinion goes well beyond the remediation of the one dry cleaner in Willits. Thus, this portion of Juncal's supplemental report is not based on a mistake or new information, and therefore, is not allowed. Rule 26 does not allow a party to supplement an expert report merely because its expert has developed another theory to rebut the opposing side's experts. To hold otherwise would render the disclosure deadlines meaningless.

The Court cautions that it is not ruling that the public records upon which Juncal relied are otherwise inadmissible, for example, that they cannot be used on cross-examination of KFD's experts. It is only ruling that Juncal's opinions based upon those records must be stricken from his supplemental rebuttal report.

### C. *Future Supplementation*

As discussed at oral argument, KFD must be given the opportunity to respond to the new data upon which Eureka now relies, and thus may need to conduct its own field investigation and submit its own supplemental reports. The City is ordered to cooperate with KFD to facilitate such investigation. In light of the lack of any trial date, the Court will not

set any deadlines at this time; however, the parties are encouraged to contact the Court if further disputes arise.

While the Court has denied KFD's motion to strike Larson's supplemental rebuttal report and Juncal's supplemental rebuttal report (with one exception), it shares KFD's concern about continuous supplementation of expert reports based on "new information," thus necessitating a new round of discovery and inevitably delaying trial of this action. Indeed, the City has essentially stated that it intends to do so. Juncal's supplemental rebuttal report states:

> Due to the continuing investigation and remedial planning activities at the Site additional relevant information will become available in the near future, including data from 24 new monitoring wells and approximately 14 vapor sample points. As additional information becomes available, at the direction of counsel I will continue to review and evaluate it and may supplement my report as appropriate, based upon such additional information.

(Dkt. No. 603-21 Ex. 5 at 14.) Accordingly, going forward, no party may serve a supplemental expert report without first obtaining leave of court or the stipulation of the opposing parties. As one district court has saliently observed:

> To rule otherwise would create a system where preliminary reports could be followed by supplementary reports and there would be no finality to expert reports, as each side, in order to buttress its case or position, could 'supplement' existing reports and modify opinions previously given. This practice would surely circumvent the full disclosure requirement implicit in Rule 26 and would interfere with the Court's ability to set case management deadlines, because new reports and opinions would warrant a new round of consultation with one's own expert and virtually require new rounds of depositions. That process would hinder rather than facilitate settlement and the final disposition of the case.

*Beller*, 221 F.R.D. at 701. As the City notes, new information is being developed all the time. And, to the extent new data is going to be introduced at trial, fairness requires that its experts be allowed to opine on such data. At some point, however, supplementation must end and the case try.

**IT IS SO ORDERED.**

7

1  Dated: May 30, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE